WARNOCK MACKINLAY LAW PLLC
Anthony Jason Ramirez
7135 E Camelback Rd., Ste. F240
Scottsdale, AZ 85251
Telephone: 602-595-2545
Email: aramirez@warnocklaw.com

TAYLOR & GOMEZ LLP
Benjamin Paul Taylor , II
2600 N 44th St., Ste. 101B
Phoenix, AZ 85008
Telephone: 602-403-0212 | Fax: 602-412-3954
Email: BT@TaylorGomezLaw.com

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (Pro Hac Vice Ca. Bar No. 144074)
dalekgalipo@yahoo.com
Eric Valenzuela (Pro Hac Vice Bar No. 284500)
evalenzuela@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone:    (818) 347-3333
Facsimile:    (818) 347-4118

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Yessenia Garcia, an individual, | Case No.: 2:21-CV-00914-SPL-JZB |
| Plaintiff, | |
| v. | **SECOND AMDENDED COMPLAINT** |
| The City of Scottsdale; Brian Steel; Nick Fay, and Does 1 through 10, inclusive, | |
| Defendants. | |

Plaintiff, Yessenia Garcia, hereby submits this Second Amended Complaint. Plaintiff, Yessenia Garcia, upon personal knowledge and upon information and belief, alleges the following:

## JURISDICTION AND VENUE

1. Plaintiff brings this action pursuant to 42 U.S.C. § 1983.

2. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. § 1983. Jurisdiction is also conferred by 28 U.S.C. § 1331 because the claims for relief derive from the United States Constitution and the laws of the United States. Jurisdiction to grant Declaratory/Injunctive Relief is conferred by 28 U.S.C. § 2201 and 42 U.S.C. §1983.

3. Venue before this Court is proper because the acts and omissions complained of herein occurred in Arizona and all of the parties currently reside in the State of Arizona.

## PARTIES

4. At all times relevant to this Second Amended Complaint, Plaintiff, Yessenia Garcia was an individual, residing in the County of Maricopa, Arizona.

5. Defendant City of Scottsdale ("City") is a municipality organized and existing under the laws of the State of Arizona. As the employer of Scottsdale Police Department ("SPD") police officers, City had primary responsibility for the training, education, and supervision of those police officers. Plaintiff is informed and believes and thereon alleges that it was City which promulgated, encouraged, administered, and/or permitted, the policies, practices, customs, and procedures under which the individual Defendant employees of City committed the acts or omissions complained of herein.

6. Defendant Scottsdale Police Department ("Police" or "SPD") is a law enforcement subdivision of City. As the employer of police officers, SPD had primary responsibility for the training, education, and supervision of those police officers. Plaintiff is informed and believes and thereon alleges that it was SPD which promulgated, encouraged, administered, and/or permitted, the policies, practices, customs, and procedures under which

the individual Defendant employees of SPD committed the acts or omissions complained of herein.

7. Defendant Bryan Steel, at all relevant times herein, is an individual employed as an SPD police officer and on information and belief, was residing in the County of Maricopa, Arizona.

8. Defendant Nick Fay, at all relevant times herein, is an individual employed as an SPD police officer and on information and belief, was residing in the County of Maricopa, Arizona.

9. Defendant Does 1-10 are sued as fictitious names because their true names and capacities are unknown to Plaintiff. When ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities. Plaintiff is informed and believes and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and those Defendants proximately caused, are responsible for and/or legally liable for Plaintiff's damages as herein alleged. Each reference in this complaint to "Defendant," "Defendants," or a specifically named Defendant refers to and includes all Defendants sued under fictitious names. Plaintiff makes all allegations contained in this Complaint against all Defendants, including Does 1-10.

**FACTUAL BACKGROUND & GENERAL ALLEGATIONS**

10. On the evening of May 24, 2020, Yessenia Garcia ("Plaintiff") drove to downtown Scottsdale and parked her car in a parking lot.

11. After parking her car, Plaintiff and her boyfriend walked to a nearby nightclub to meet some friends and enjoy the night. After being at the nightclub for a significant time, Plaintiff and her group walked to another nearby nightclub.

12. While Plaintiff was inside of the nightclub with her friends, an individual vandalized Plaintiff's car by smashing the windshield while it remained park in the same parking space where Plaintiff had originally parked it. At no time did Plaintiff's vehicle move

from the original parking space from the time she parked her car, until the time the individual smashed her windshield.

13. SPD officers Nick Fay and Bryan Steel were patrolling on bicycles that evening in downtown Scottsdale area.

14. Later that evening, Plaintiff and her boyfriend left the nightclub and walked to her car to get her cigarettes.

15. When Plaintiff and her boyfriend arrived at her car, which was still parked in the same place she had initially parked it, they discovered that her windshield had been shattered.

16. Plaintiff and her boyfriend noticed some nearby SPD officers, including Officer Fay, and approached them to report the damage to her car.

17. Plaintiff's boyfriend reported the damage to Plaintiff's car to the nearby SPD officers, including Officer Fay. Plaintiff's boyfriend attempted to explain to the SPD officers that they had just returned to their vehicle from a nearby nightclub to find that Plaintiff's windshield had been shattered and that the vehicle had not been moved from where they initially parked it.

18. Defendant Officer Steel then approached Officer Fay and Plaintiff's boyfriend as they were talking. Plaintiff and her boyfriend then attempted to explain to Officers Fay and Steel that she was the victim who of a vandalized windshield, that her car had not moved from the initial space where they originally parked it and that when they came out of the nightclub they found that the car had been vandalized.

19. Officers Steel and Fay then began accusing Plaintiff and to a lesser extent, her boyfriend, of being suspects in a prior hit and run incident. Plaintiff and her boyfriend unsuccessfully attempted to explain to Officers Fay and Steel that they were not involved in any hit and run, that they had been inside of a nightclub all night prior to returning to their vehicle to find it vandalized, in the same location where they initially parked it.

20. Plaintiff and her boyfriend attempted to prove to Officers Fay and Steel that they were in fact in the nightclub and that the car had not moved from where they originally parked

it, but Officers Steel and Fay refused to listen to them and ignored a plethora of exculpatory evidence readily available to them at the scene which easily established that Plaintiff and her boyfriend were telling the truth. For example, Plaintiff and her boyfriend attempted to show the involved officers transaction receipts from their purchases at the nightclubs, they asked to officers to go speak to the bouncers and security of the nightclubs where they were just at who would confirm their whereabouts earlier that evening, and pointed out that there were obviously numerous surveillance cameras surrounding the area of where Plaintiff parked her vehicle and where the nightclubs where located, including surveillance inside of the nightclubs which would confirm their whereabouts. Further, Plaintiff's friends, who she was with while inside of the nightclubs, also attempted to talk to involved officers to confirm that Plaintiff was with them that evening and that she had not left the nightclub prior to returning to her car and finding the windshield vandalized. However, the involved officers, including Fay and Steel, continued to ignore various evidence which established that Plaintiff's car had not moved since she initially parked it earlier that evening.

21. The race of Plaintiff and her boyfriend, who are Latina and African-American, was a factor in Officer Fay and Steel refusing to believe them and in ignoring substantial evidence available at the scene which proved that Plaintiff was telling the truth about not being involved in any hit and run incident.

22. Since Plaintiff's vehicle had not moved for a few hours after she parked her car, her car was cold to the touch and was not warm, especially near the area of the hood. The car was not warm to the touch as if it had been recently driven.

23. Plaintiff did not have any kind of glass on her clothing, including her shirt, as may be expected with someone involved in a hit and run.

24. The hood of Plaintiff's car, as well as her front bumper, were not dented or bent as may be expected in a car involved in a hit and run. Further, there was no blood, human tissue or fluid on the car, including the windshield, which may be expected in a car involved

in a hit and run. Further, the involved officers, including Fay and Steel, did not perform any kind of chemical test on the windshield to test for blood, DNA, finger prints or anything else.

25. The involved officers, including Fay and Steel, then intentionally began make false statements to Plaintiff including that the hood of the car was warm despite knowing very well that it was not, that Plaintiff had pieces of glass on her clothing, including her shirt, despite inspecting her clothing closely, including with a flashlight and never seeing any glass or anything that resembled glass on her clothing, that there were handprints on the windshield, even though the officers never saw any handprints, or anything that resembled handprints on the windshield, and telling Plaintiff that the officers saw her car drive up and park, even though they never observed Plaintiff's car move from the parking space where it was originally parked.

26. Officer Fay then went and reviewed some nearby surveillance cameras which captured the area where Plaintiff's car had been parked. The video footage from the nearby surveillance cameras confirmed what Plaintiff and her boyfriend had been telling the truth to the involved officers, including Officers Fay and Steel, that her car had not been moved from the parking space where she had originally parked it and that they were no way involved in any hit and run. Despite the video footage from the surveillance cameras confirming that Plaintiff had not moved her car from where she had parked it hours earlier, Officer Fay continued to falsely accuse Plaintiff of being involved in a hit and run incident.

27. Footage from the nearby surveillance cameras also confirmed that Plaintiff's windshield had been intentionally vandalized and not involved in any hit and run.

28. The involved officers, including Fay and Steel, appear to have fabricated evidence to incriminate Plaintiff, including intentional false statements by the involved officers to Plaintiff and to her boyfriend.

29. After being informed that Plaintiff was being detained, the involved officers then refused Plaintiff's request to speak to an attorney, despite the fact that Plaintiff was being detained and was not free to leave. Despite being in a custodial interrogation, the involved

officer's refused Plaintiff's request, and violated her rights, to speak to counsel. The involved officers then resumed questioning Plaintiff without affording her the opportunity to contact counsel, in violation of her rights.

30. Despite lacking both reasonable suspicion and probable cause, the involved officers, including Officers Fay and Steel, detained and ultimately arrested Plaintiff. The involved male officers patted down Plaintiff, including in her intimate areas like her buttocks, and they did not summons a female officer to do the pat down of Plaintiff.

31. Plaintiff was then taken to the Scottsdale police station where she was forced to give blood. The involved officer(s) did not properly draw Plaintiff's blood and stabbed her first in the arm with the syringe without drawing any blood. Despite Plaintiff not moving when the officer(s) were trying to draw blood, the involved officer(s) falsely stated that Plaintiff was at fault for them improperly attempting to draw her blood. The attempted blood draw and the actual blood draw caused Plaintiff severe emotional distress and physical pain.

32. Plaintiff was also stripped nude and humiliated while at the jail, despite the involved officers, including Fay and Steel, knowing that there was never any glass on her clothing, including her shirt, and despite knowing that their statements to Plaintiff were false regarding the existence of glass on her clothing, including her shirt.

33. Plaintiff spent the night in jail and was released the following day.

34. The Scottsdale Police Department then released Plaintiff's name and mugshot to the media, where she was depicted in both local and national news outlets as a drunk driver in a hit and run accident.

35. As a result of having her face and identity displayed on various media outlets, Plaintiff suffered severe emotional distress, including emotional distress that negatively affected her ability to continue her working, Plaintiff would not want to leave the house, Plaintiff suffered panic attacks, paranoia, anxiety, stress, and loss of sleep and weight. Plaintiff now has a difficult time being around people, Plaintiff has a hard time talking with others, she has lost friends, family and co-workers who stopped

talking to her, even strangers would give her bad looks and say hurtful things to her for several days after Plaintiff was shown on TV. Further, Plaintiff would have a difficult time when she was recognized in public, or had a fear of being recognized in public. Moreover, Plaintiff now suffers from emotional distress whenever she is around members of law enforcement.

36. The involved officers, including Fay and Steel, were aware of exculpatory evidence at the scene that established Plaintiff was not involved in a hit and run and that negated establishing reasonable suspicion or probable cause against Plaintiff. A reasonable officer under similar circumstances would not have mistakenly believed that there was reasonable suspicion or probable cause to detain or arrest Plaintiff.

37. The involved officers, including Officers Fay and Steel, had a duty to investigate whether or not Plaintiff was actually involved in a hit and run and failed in their duty to investigate.

38. The involved officers, including Fay and Steel, failed to take basic investigation steps in connection with establishing reasonable suspicion and probable cause against Plaintiff. Further, despite lacking reasonable suspicion or probable cause, Officers Fay and Steel, still detained and arrested Plaintiff.

39. The involved officers, including Officers Fay and Steel, intentionally and recklessly failed to investigate a plethora of evidence available at the scene and other leads available at the scene, in violation of Plaintiff's rights, including her constitutional rights.

40. The involved officers, including Fay and Steel, purposefully ignored contrary evidence and detained and arrested Plaintiff as a hit and run suspect, in the face of substantial evidence to the contrary that was readily and easily available at the scene. There was substantial evidence present at the scene that gave, or should have given, the involved officers, including Fay and Steel, pause about assuming that Plaintiff was involved in a hit and run uncritically.

41. The involved officers, including Fay and Steel, failed to reasonably interview readily available witnesses available at the scene, investigate basic evidence and to reasonably inquire if Plaintiff was involved in a hit and run before detaining and arresting Plaintiff without a warrant. Further, based on the evidence that was available at the scene, a reasonable officer under similar circumstances would not have believed that Plaintiff was not the driver or involved in a hit and run.

## **FIRST CLAIM FOR RELIEF**

### **Unreasonable Search and Seizure—Detention and Arrest (42 U.S.C. § 1983)**

(Against Defendants Fay, Steel, and DOES 1-10)

42. Plaintiff repeats and reallege each and every allegation in paragraph 1 through 41 of this Complaint with the same force and effect as if fully set forth herein.

43. Defendants Fay and Steel, caused Plaintiff to be detained and arrested in violation of her right to be secure in her person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

44. As a result of the conduct of the involved officers, including Fay and Steel, they are liable for Plaintiff's injuries because they were either integral participants to the violations of Plaintiff's rights or they failed to intervene to prevent these violations.

45. The involved officers, including Fay and Steel, detained the Plaintiff without reasonable suspicion and arrested her without probable cause.

46. After being informed that Plaintiff was being detained, the involved officers then refused Plaintiff's request to speak to an attorney, despite the fact that Plaintiff was being detained and was not free to leave. Despite being in a custodial interrogation, the involved officer's refused Plaintiff's request, and violated her rights, to speak to counsel. The involved officers then resumed questioning Plaintiff without affording her the opportunity to contact counsel, in violation of her rights.

47. Plaintiff was then taken to the Scottsdale police station where she was forced to give blood. The involved officer(s) did not properly draw Plaintiff's blood and stabbed her first in the arm with the syringe without drawing any blood. Despite Plaintiff not moving when the officer(s) were trying to draw blood, the involved officer(s) falsely stated that Plaintiff was at fault for them improperly attempting to draw her blood. The attempted blood draw and the actual blood draw caused Plaintiff severe emotional distress and physical pain.

48. The involved officers, including Fay and Steel, were aware of exculpatory evidence at the scene that established Plaintiff was not involved in a hit and run and that negated establishing reasonable suspicion or probable cause against Plaintiff. A reasonable officer under similar circumstances would not have mistakenly believed that there was reasonable suspicion or probable cause to detain or arrest Plaintiff.

49. The involved officers, including Officers Fay and Steel, had a duty to investigate whether or not Plaintiff was actually involved in a hit and run and failed in their duty to investigate.

50. The involved officers, including Fay and Steel, failed to take basic investigation steps in connection with establishing reasonable suspicion and probable cause against Plaintiff. Further, despite lacking reasonable suspicion or probable cause, Officers Fay and Steel, still detained and arrested Plaintiff.

51. The involved officers, including Officers Fay and Steel, intentionally and recklessly failed to investigate a plethora of evidence available at the scene and other leads available at the scene, in violation of Plaintiff's rights, including her constitutional rights.

52. The involved officers, including Fay and Steel, purposefully ignored contrary evidence and detained and arrested Plaintiff as a hit and run suspect, in the face of substantial evidence to the contrary that was readily and easily available at the scene. There was substantial evidence present at the scene that gave, or should have given, the involved officers, including Fay and Steel, pause about assuming that Plaintiff was involved in a hit and run uncritically.

53. The involved officers, including Fay and Steel, failed to reasonably interview readily available witnesses available at the scene, investigate basic evidence and to reasonably inquire if Plaintiff was involved in a hit and run before detaining and arresting Plaintiff without a warrant. Further, based on the evidence that was available at the scene, a reasonable officer under similar circumstances would not have believed that Plaintiff was not the driver or involved in a hit and run.

54. The conduct of Officers Fay and Steel, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Officers Fay and Steel.

55. Accordingly, Defendants Fay and Steel, are each liable to Plaintiff for compensatory and punitive damages.

56. Plaintiff also seeks attorney fees under this claim.

## SECOND CLAIM FOR RELIEF

### Substantive Due Process (42 U.S.C. § 1983)

(Against Defendants Fay, Steel and DOES 1-10)

57. Plaintiff repeats and reallege each and every allegation in paragraphs 1 through 56 of this Complaint with the same force and effect as if fully set forth herein.

58. Plaintiff had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, intentionally and recklessly failing to investigate evidence or other leads available at the scene which established Plaintiff was not involved in any crime.

59. As a result of the involved officers, including Fay and Steel, intentionally and recklessly failing to investigate evidence and leads that were available at the scene, Plaintiff was unlawfully detained and arrested. Plaintiff was thereby deprived of her constitutional right be free from state actions that deprive her of life, liberty, or property in such a manner

as to shock the conscience, including but not limited to, intentionally and recklessly failing to investigate evidence or other leads available at the scene which established Plaintiff was not involved in any crime.

60. The involved officers, including Fay and Steel, purposefully ignored contrary evidence and detained and arrested Plaintiff as a hit and run suspect, in the face of substantial evidence to the contrary that was readily and easily available at the scene.

61. The involved officers, including Fay and Steel, acting under color of state law, thus violated the Fourteenth Amendment rights of Plaintiff to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience.

62. The aforementioned actions of the involved officers, including Fay and Steel, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Plaintiff and with purpose to harm unrelated to any legitimate law enforcement objective.

63. As a direct and proximate cause of the acts of the involved officers, including Fay and Steel, Plaintiff experienced pain and suffering and severe emotional distress.

64. As a result of the conduct of the involved officers, including Fay and Steel, they are liable for Plaintiff's injuries, either because they were integral participants in the denial of due process, or because they failed to intervene to prevent these violations.

65. The conduct of the involved officers, including Fay and Steel, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of the Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendants Fay and Steel.

66. Plaintiffs also seek attorney fees under this claim

# THIRD CLAIM FOR RELIEF

## Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)

(Against Defendants DOES 1-10 and The City of Scottsdale)

67. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 66 of this Complaint with the same force and effect as if fully set forth herein.

68. On and for some time prior to mAY 24, 2020 (and continuing to the present date) Defendants DOES 1-10, who were managerial, supervisorial, and policymaking employees of the City, deprived Plaintiffs and Plaintiff of the rights and liberties secured to ger by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiff, and of persons in her class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

(a) Employing and retaining as police officers and other personnel, including Fay and Steel, who Defendants DOES 1-10, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written SPD's policies, including the detaining people without reasonable suspicion and arresting them without probable cause;

(b) Of inadequately supervising, training, controlling, assigning, and disciplining SPD Police Officers, and other personnel, including Fay and Steel, who Defendant SPD knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including the propensity for detaining individuals without reasonable suspicion and arresting individuals without probably cause;

(c) By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendants by Fay and Steel, who are Police Officers of SPD;

(d) By failing to discipline the SPD Police Officers' conduct, including but not limited to, detaining individuals without reasonable suspicion, and arresting them without probable cause;

(e) By ratifying the intentional misconduct of Defendants by Fay and Steel, who are Police Officers of SPD;

(f) By having and maintaining an unconstitutional policy, custom, and practice of detaining and arresting individuals without probable cause or reasonable suspicion, which also is demonstrated by inadequate training regarding these subjects. The policies, customs, and practices of DOES 1-10, were done with a deliberate indifference to individuals' safety and rights;

(g) By failing to properly investigate claims of unlawful detention and arrest by SPD Police Officers;

(h) By failing to institute appropriate policies regarding constitutional procedures and practices for detaining and arresting individuals;

(i) By unlawfully detaining and arresting individuals, condoning this behavior, and conspiring to cover-up civil rights violations; and

(j) By totally inadequate training of its officers and other SPD employees, including defendants by Fay and Steel, despite clear need.

69. By reason of the aforementioned policies and practices of Defendants DOES 1-10, Plaintiff was injured and subjected to pain and suffering and severe emotional distress.

70. Defendants DOES 1-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff, and other individuals similarly situated.

71. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants DOES 1-10, acted with an intentional, reckless, and callous disregard for the rights of Plaintiff. Defendants DOES 1-10, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

72. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants DOES 1-10, were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff.

73. By reason of the aforementioned acts and omissions of Defendants DOES 1-10, Plaintiff was harmed.

74. Accordingly, Defendants DOES 1-10, each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

75. Plaintiffs also seek attorney fees under this claim.

## FOURTH CLAIM FOR RELIEF
### Municipal Liability— Ratification (42 U.S.C. § 1983)
(Against Defendants DOES 1-10 and The City of Scottsdale)

76. Plaintiff repeat and reallege each and every allegation in paragraphs 1 through 75 of this Complaint with the same force and effect as if fully set forth herein.

77. Officers Fay and Steel, acted under color of law when they detained and then arrested Plaintiff.

78. The acts of Officers Fay and Steel, deprived Plaintiff of her particular rights under the United States Constitution.

79. DOES 1-10 acted under color of state law.

80. DOES 1-10 had final policymaking authority of Defendant SPD concerning the acts of Officers Fay and Steel.

81. DOES 1-10 ratified Officers Fay and Steel's acts, including detention and arrest of Plaintiff. That is DOES 1-10 knew of and specifically made a deliberate choice to approve Fay and Steel's acts and the basis for it.

82. On information and belief, DOES 1-10 knew that Plaintiff was detained without reasonable suspicion and was arrested without probable cause, despite a plethora of evidence available at the scene which established that Plaintiff was not involved in any criminal activity, including surveillance video.

83. On information and belief, the official policies with respect to the incident are that officers are not to detain individuals without reasonable suspicion and they are not to arrest them without probable cause, and that they should investigate evidence available at the scene, if feasible, to determine whether the officers have the requisite reasonable suspicion to detain and probable cause to arrest. The officers' actions deviated from these official policies because Plaintiff had committed no crime, and Fay and Steel lacked probable cause to arrest her and reasonable suspicion to even detain her and because there was a plethora of readily available exculpatory evidence at the scene which was ignored and not investigated.

84. On information and belief, the SPD approved of the Officers Fay and Steel's actions after DOES 1-10 reviewed the related materials, and after which DOES 1-10 found the officers' actions to be within the official policies of SPD. On information and belief, the basis for such approval was based on the officers' self-serving statements and by ingorning all the evidence that clearly showed Plaintiff was not involved in any criminal activity.

## **FIFTH CLAIM FOR RELIEF**
### **False Arrest/False Imprisonment**
(Against Defendant Fay, Steel, DOES 1-10 and the City)

85. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 84 of this Complaint with the same force and effect as if fully set forth herein.

86. The involved officers, including Fay and Steel, while working as police officers for the City, and acting within the course and scope of their duties, intentionally deprived Plaintiff of her freedom of movement, including by telling her she was being detained and was not free to leave, and by eventually arresting her. Fay and Steel, also detained Plaintiff without reasonable suspicion and arrested her without probable cause.

87. Plaintiff did not knowingly or voluntarily consent.

88. The conduct of against Plaintiff by Fay and Steel, was a substantial factor in causing the harm of Plaintiff.

89. City is vicariously liable for the wrongful acts of Fay and Steel during the course and scope of their employment as police officers for the City.

90. The conduct of Fay and Steel was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling Plaintiffs to an award of exemplary and punitive damages.

## SIXTH CLAIM FOR RELIEF
### Negligence
(Against All Defendants)

91. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 90 of this Complaint with the same force and effect as if fully set forth herein.

92. The actions and inactions of the Defendants were negligent and reckless, including but not limited to:

   i.  the failure to properly and adequately train employees, including DOES 1-4, with regards to detaining and arresting individuals and investigating whether individuals engaged in criminal activity;

   ii.  the failure to properly and adequately assess the need to detain, arrest Plaintiff;

   iii.  the negligent tactics and handling of the situation with Plaintiff, including the investigation;

   iv.  the negligent detention and arrest of Plaintiff;

   v.  the failure to properly train and supervise employees, both professional and non-professional, including Fay and Steel;

   vi.  the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Plaintiff; and

   vii.  the negligent handling of evidence and witnesses.

93. As a direct and proximate result of defendants' conduct as alleged above, and other undiscovered negligent conduct, Plaintiff was caused to suffer pain and suffering and severe emotional distress. Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiff suffered extreme and severe mental anguish and pain and has been injured in mind and body.

94. City is vicariously liable for the wrongful acts of Fay and Steel which occurred during the course and scope of their employment as police officer's for the City.

## SEVENTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
(Against Defendants Fay, Steel and City)

95. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 94 of this Complaint with the same force and effect as if fully set forth herein.

96.     Throughout this entire incident, Defendants' repeated reckless disregard for and violation of Plaintiff's rights alleged herein, shows that Defendants, each of them, engaged in extreme and outrageous conduct, intended to cause Plaintiff's emotional distress and/or recklessly disregarded the near certainty that such distress would result from their conduct, and that Plaintiff did experience severe emotional distress as a result of Defendants' conduct. See *Johnson v. McDonald*, 197 Ariz. 155, 160, 3 P.3d 1075, 1080 (1995) (citing Ford, 153 Ariz. at 43, 734 P.2d at 585).

97.     As a direct and proximate result of Defendants' conduct and constitutional violations, and in accordance with 42 U.S.C. §1983, Plaintiff has suffered and will continue to suffer, damages, including but not limited to, severe emotional distress, physical and/or mental anxiety and anguish.

98.     Defendants' malicious, despicable, and/or wrongful conduct as herein alleged was intentional, done with malice, and/or with a conscious disregard for Plaintiff's rights, and as a result of this conduct, Plaintiff is entitled to recover punitive damages according to proof at trial.

## JURY DEMAND

Plaintiffs demand a jury trial to all issues so triable.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants, as to all causes of action, as follows:

1. Award of general, special and compensatory damages in an amount to be proven at trial, but in no event less than $300,000.00;

2. Punitive damages against individually named Defendants, as allowed by law;

3. Attorneys' fees pursuant to 42 U.S.C. § 1988, and any other appropriate statue;

4. Injunctive relief, both preliminary and permanent, as allowed by law, (including preliminary injunctive relief to be based upon a separate application);

5. Costs of suit incurred herein; and

6. Such other and further relief as the Court may deem just and proper.

DATED this 12TH day of October, 2021.

LAW OFFICES OF DALE K. GALIPO

By: /s/ Eric Valenzuela
    Eric Valenzuela, Esq.
    Attorneys for Plaintiff