**SCOTTSDALE CITY ATTORNEY'S OFFICE**
Lori S. Davis (SBN: 027875)
3939 North Drinkwater Boulevard
Scottsdale, Arizona 85251
(480) 312-2405 (T)
(480) 312-2548 (F)
legal@scottsdaleaz.gov

Attorneys for Defendants City of Scottsdale,
Brian Steel, and Nicolas Fay

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Yessenia Garcia, an individual,<br><br>        Plaintiff,<br><br> vs.<br><br>The City of Scottsdale, Brian Steel, Nick Fay, and Does 1 through 10, inclusive.<br><br>        Defendants. | Case No.: 2:21-cv-00914-SPL-JZB<br><br>**CITY DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

Defendants City of Scottsdale, Brian Steel, and Nicolas Fay ("Defendants"), through undersigned counsel, hereby submit their Reply in Support of their Motion for Summary Judgment ("Motion").[1]

There is no disagreement between the parties that *we **now** **know*** Plaintiff did not commit the hit and run. At the time of Plaintiff's arrest, however, officers were still trying to piece the puzzle together to make that determination. Officers are not omnipotent. With time, evidence is uncovered, the puzzle is solved, and Plaintiff is never charged. The Court cannot judge the officers' actions based upon facts that are now known or with hindsight. What officers knew *before* Plaintiff's arrest and what they learned *after* the arrest are entirely different. In evaluating reasonable suspicion and probable cause, the Court must only consider, from the perspective of a reasonable officer, what was known at the time by the detaining and arresting officers. Neither Sgt. Steel nor Ofc. Fay detained or arrested Plaintiff, and Plaintiff has failed to demonstrate integral participation. Viewing the facts from

---

[1] Since the filing of the Motion, Plaintiff filed an Unopposed Motion to Voluntarily Dismiss Counts Three and Four of the Second Amended Complaint ("SAC"), the *Monell* claims against the City. *See* Doc. 47.

a reasonable objective officers' perspective, the Court should conclude that Plaintiff's constitutional rights were not violated, and no federal claims are viable.

Regarding service of the notice of claim, Plaintiff does not dispute that it was filed and served on the City and Sgt. Steel <u>after</u> November 21, 2020 more than 180 days after her arrest, and that no notice of claim was ever served upon Ofc. Fay. *See* PSOF ¶¶ 102-103 (Doc. 54). Plaintiff only argues that her claims did not accrue on the date of her arrest, but rather at some unspecified date "in June of 2020 after conferring with a criminal defense attorney" because it was only then that she "realize[d] ***the extent of her damage*** to formulate an effective notice of claim." *See* Response ("Resp.") at 19:10-15 (emphasis added). However, accrual does not require a plaintiff to determine the full "extent" of damage. Here, Plaintiff knew she was "damaged" – she was arrested for a crime she did not commit. Thus, from the date of that arrest she was on notice to protect her rights regarding any claims which could result therefrom. As she failed to file and serve her notice of claim within 180 days of her arrest date, all state claims arising from that arrest are forever barred.

**I.     Legal Standard.**

In opposing summary judgment, a non-movant must demonstrate the existence of any dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963)). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact that would defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

**II.    There was no constitutional violation.**

      **a.     Reasonable suspicion supported Plaintiff's detention.**

Plaintiff's Response virtually ignores and abandons her unreasonable detention claim. Plaintiff points out facts that could have supported Plaintiff's claimed innocence (*i.e.*, vehicle was cold to the touch, no injuries visible on Plaintiff, no glass on her clothing, no damage or dents to the hood, no bodily fluid on the vehicle). *See* Resp. at 2:6-10. For the purpose of this Motion, Defendants do

not dispute those facts could have been or were considered by the officers as part of the constellation of facts before them.[2]  Those facts, however, do not negate reasonable suspicion given the other undisputed facts: in under 30 minutes and within a quarter mile of a hit and run with life threatening injuries, police locate Garcia's vehicle; it matches the suspect vehicle's description and has a shattered windshield consistent with an impact with an airborne human body; Garcia's boyfriend states that it looks like someone got slammed into its windshield; and Garcia admits it is her vehicle. At that point, officers have reasonable suspicion to initiate an investigative stop to detain Garcia. Plaintiff's Response provides nothing to controvert that reasonable suspicion. Plaintiff tries to argue that the later reviewed Galleria video removes reasonable suspicion, *see* Resp. at 1:20-24, but that information was not known at the time that Plaintiff was detained by Ofc. Attarpour at approximately 11:18 pm, about one minute after he arrived on scene.  Accordingly, Plaintiff's Section 1983 claim for unlawful detention fails because reasonable suspicion supported the stop. Defendants are entitled to summary judgment entered in their favor and dismissal of Plaintiff's Section 1983 unreasonable detention claim.

### b. Probable cause supported Plaintiff's arrest.

Plaintiff's false arrest claim essentially boils down to: We now know Plaintiff was innocent, therefore she was falsely arrested.  However, the standard to establish a constitutional violation is whether probable cause supported the arrest at the time, not whether subsequently learned facts exonerated the arrestee.  Officers do not have to be ***right***, they just have to be ***reasonable*** to meet constitutional muster. Here, Plaintiff's Response fails to bring forward facts which would have negated the probable cause that supported Plaintiff's arrest.  Plaintiff was arrested at 12:05 am, and only facts known to the officers prior to that time may be considered.

No one has testified that exonerating evidence from the Galleria video was known prior to Plaintiff's arrest or prior to her blood draw. Plaintiff argues that Galleria Guard Darryl Williams testified that Ofc. Fay was able to view the security footage "shortly after 11:39 pm" and as such, "the Court must assume that Officer Fay viewed the video prior to Plaintiff being arrested." *See* Resp. at

---

[2] Defendants maintain that Plaintiff's clothing did have light reflective particles which appeared to be glass.  Nevertheless, even accepting Plaintiff's denial of this fact as true (only for purposes of this Motion), the absence of such particles does not negate probable cause.

19466386v1                                                       3

13:13-24. However, this misstates the evidence and asks the Court to make an unreasonable assumption from existing facts.[3]

Williams testified that he and Ofc. Fay were only able to *begin to access* the surveillance video at 11:39 pm. ***Ex. 98,*** *Williams Depo. at 49:10-22, 84:8-23*; *see also* ***Ex. 77,*** *Williams IA Trans. at COS-YESGAR-000877:62-000878:69* ("So I was able to pull up the video [at 11:39 pm], but we – it took a long time just to see anything.").[4] Due to "buffering" in his system it took an additional hour before he and Ofc. Fay were able to begin the actual review process at approximately 12:45am – 1:00am, which he understood at the time to be *after* Plaintiff had been arrested. ***Ex. 77,*** *Williams IA Trans. at COS-YESGAR-000878:76-89, -000882:213-221*; *see also* ***Ex. 98,*** *Williams Depo. at 54:13-55:3*. Williams could not recall the specific time that Ofc. Fay was able to confirm the car had not moved (***Ex. 98,*** *Williams Depo. at 71:13-16, 74:15-22)* but he knew that it took from about 1:00 am to 2:30 am to make that determination. ***Ex. 77,*** *Williams IA Trans. at COS-YESGAR-000878:91-000879:105*. Williams confirmed that the video analysis was complicated by the constant panning of the security camera and poor image quality as viewed on the security monitor at the time. ***Ex. 98****, Williams Depo. at 26:17-20, 55:10-15, 69:1-11, 72:4-8, 96:3-16; see also PSOF ¶ 88 (Doc. 54)* (Undisputed poor image quality and Ofc. Fay unable to see windshield damage on monitor). He also confirmed that he did not know a vandal had smashed Plaintiff's windshield, had seen no video evidence of that at the time, and was unaware that had taken place until he gave a statement to IA over a year later (on August 28, 2021). ***Ex. 98****, Williams Depo. at 12:6-10, 12:22-25, 69:12-24; see also PSOF ¶ 101 (Doc. 54)* (*Undisputed that vandalism was unknown until news reporter discovered it*).

---

[3] Early in his deposition, Williams testified that he had pulled clips for Ofc. Fay and believed they were shown in the left margin of the screen depicted on Ofc. Fay's OBC video (just prior to the OBC video ending). He later recanted that testimony, recognizing that would have been impossible to have previously pulled clips related to the Garcia vehicle as the mouse had only begun to work at 11:39 pm when Ofc. Fay's OBC video stops. *See* ***Ex. 98*** *Williams Depo. at 48:7-49:22, 83:5-84:23, 87:17-88:25.*

[4] In his deposition, Williams testified that everything he stated in his Internal Affairs ("IA") interview was true and accurate as if it were under oath and confirmed that his answers to the IA Investigator's questions would be exactly the same if asked in his deposition. ***Ex. 98****, Williams Depo. at 50:20-51:3, 64:9-12*. Williams also deferred to his IA statement with regard to the timing of events as being more accurate than what he could estimate in his deposition. *Id*. *at 74:15-75:13*; *see also* DSOF 90-91.

Thus, contrary to Plaintiff's assertion, Williams did not testify that exonerating information was known prior to Plaintiff's arrest. In fact, it would have been impossible for Ofc. Fay to have reviewed and analyzed four hours of video in the timeframe prior to Plaintiff's 12:05 am arrest. Obviously, analysis of the video took time, as Williams confirmed.

Consistent with Williams' and Ofc. Fay's testimony, it is undisputed that the arresting officer, Ofc. Roberson, had no information from the Galleria video from the time of arrest through the time of the blood draw at 1:06 am. *See* **Ex. 9**, Roberson Declaration at ¶¶ 18-19; *see also* **Ex. 30**, Roberson IA Trans. at COS-YESGAR-001157:299-001158:329 ("Q: … do you recall if you knew at your time of arrest whether the car moved or not? A: No…There was no information that it had or hadn't moved…Q: you didn't base your decision on arrest and processing the DUI based on that video[?] A: Oh, ha – no, no, no. ..No, no, no.") and at COS-YESGAR-001161:430-001162:448 ("Q: Do you recall before you did the blood draw… [at] 0106 …. do you know if at that time…you knew whether the car had moved or not? A: No. Q: Had you been notified at that time? A: No, I would not have been notified at that time. I have no idea.").

In addition to the surveillance footage argument, Plaintiff asserts that issues of fact preclude summary judgment, specifically whether glass was on Plaintiff's clothing and whether she entered her car after the windshield had been shattered. *See* Resp. at 13:13-14:9. Likewise, Plaintiff argues other facts weighing in her favor such as the car hood being cold to the touch, neither Plaintiff nor Thompson having visible injuries, and the vehicle having no additional damage, dents, or bodily fluids/tissue thereon.[5] For purposes of this Motion, accepting those facts as true does not negate reasonable suspicion or probable cause. This evidence would go to the weight of the evidence against her and could have supported Plaintiff's innocence had she been charged and tried. However, at the time of arrest, this evidence would not have exculpated her or negated probable cause. The other

---

[5] Plaintiff also cites to Thompson's banking transactions, statements from her friends, and additional investigation that could have been conducted at nearby clubs. These facts are addressed in Defendants' Motion and, for the reasons stated therein, do not negate probable cause. *See also* PSOF ¶¶ 62-63 (Doc. 54) (undisputed that officer viewed bank transactions which do not list time of charges). Also as discussed in the Motion, there is also no constitutional duty to prove Plaintiff's alibi.

evidence implicating Plaintiff in this crime was simply too strong and the threshold for probable cause was met. As such, Plaintiff's federal claims based upon her arrest fail.

      **c.    Neither Sgt. Steel nor Ofc. Fay detained or arrested Plaintiff, and Plaintiff's integral participation theory is unsupported.**

Plaintiff sues Sgt. Steel and Ofc. Fay, but fails to specifically state what it was exactly that Sgt. Steel and Ofc. Fay did to allegedly violate Plaintiff's rights. Plaintiff asserts constitutional claims based upon her arrest and detention, and generally casts blame for her detention and arrest upon these two defendants in a conclusory fashion. However, it is undisputed that neither Sgt. Steel nor Ofc. Fay detained or arrested Ms. Garcia. Plaintiff asserts an integral participation theory but fails to offer evidence in support thereof. *See, e.g.,* Resp. at 8:25-27.

Vicarious liability is inapplicable to Section 1983 suits. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). An individual can only be held liable for violating another's constitutional rights if he personally participated in the alleged constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A plaintiff must also establish an affirmative causal link between each defendant's conduct and the alleged constitutional deprivation. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). "The inquiry into causation must be individualized," meaning the plaintiff must "set forth specific facts" connecting the defendant to the conduct that caused his constitutional injury. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). In light of these principles, the Ninth Circuit has expressly rejected "mere presence" and "team effort" theories of liability. *See Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996) (the "team effort" theory of liability impermissibly allows the jury "to lump all the defendants together, rather than require it to base each individual's liability on his own conduct."). To face liability under Section 1983, "each public official must integrally participate in the unlawful seizure[]." *Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020).

Here, Plaintiff's integral participation theory is unsupportable. First, Plaintiff has failed to establish a constitutional violation. Second, it is undisputed that Ofc. Fay had no contact whatsoever with the Plaintiff. *See* PSOF ¶ 47. His only participation was at the scene of the hit and run near Gus' Pizza, biking the area to look for the suspect vehicle, being flagged down by Plaintiff's boyfriend Thompson (who told him it looks like somebody got slammed into the windshield of his girlfriend's

car), interviewing Thompson, and then trying to access and analyze the Galleria surveillance video. Ofc. Fay did not detain or arrest Plaintiff. Thus, Plaintiff has failed to bring forth evidence to prove Ofc. Fay was an integral participant in any alleged constitutional violation.

With regard to Sgt. Steel, while Sgt. Steel had contact with Plaintiff as part of the investigation, there is no evidence that Sgt. Steel directed Plaintiff's detention or arrest. The detaining officer, Ofc. Attarpour, began to detain Plaintiff before Sgt. Steel arrived on scene and without his direction. *See* **Ex. 45 *(Attarpour OBC 2)***. Similarly, Sgt. Steel did not integrally participate in Plaintiff's arrest. Sgt. Steel briefed the arresting officer, Ofc. Roberson, on the facts he had observed up to that point, but then handed the investigation over to Ofc. Roberson. *See* **Ex. 1**, *Department Report, Roberson Supplement at COS-YESGAR-000006; see also* **Ex. 30**, *Roberson IA Trans. at COS-YESGAR-001149:82-001152:175*. Ofc. Roberson testified that he developed his own probable cause for the arrest (with no information from the Galleria video at the time) and was ***not*** instructed by Sgt. Steel to make the arrest. *See* **Ex. 30**, *Roberson IA Trans. at COS-YESGAR-001154:225-001155:252* ("Q:….did you make the decision that there was probable cause for the arrest? A: Absolutely…. Based on the totality of everything I see, smell, and hear. Like every DUI……Q: And the reason I asked that is I just want to make sure Sergeant Steel never told you, 'Hey, you need to arrest her.' A: Oh, gosh, no. …. No, no, no, no…. That's my decision."). Thus, Plaintiff has failed to bring forth evidence to establish that Sgt. Steel was an integral participant in any alleged constitutional violation.

        **d.**    **There was no egregious or deliberately indifferent conduct to shock the conscience and, as such, Plaintiff's Fourteenth Amendment claim fails.**

Plaintiff's Response fails to show evidence to support her Fourteenth Amendment claims against Sgt. Steel and Ofc. Fay. As articulated in the Motion, the officers' conduct was not egregious or deliberately indifferent and does not shock the conscience. There is no evidence that any officer acted with a purpose to harm unrelated to legitimate law enforcement objectives. To the contrary, both Sgt. Steel and Ofc. Fay (and all other officers) acted constitutionally reasonably under the totality of the circumstances known to them at the time. Plaintiff's Fourteenth Amendment claim fails.

         **e.**      **Plaintiff has failed to support her non-claims related to the right to counsel, blood draw, pat down search, and clothing seizure.**

Plaintiff's Response fails to show facts to support any potential claims for constitutional violations related to her right to counsel, blood draw, pat down search, or clothing seizure. First, Plaintiff fails to state those claims in her SAC. Second, neither Sgt. Steel nor Ofc. Fay were involved in these acts (*i.e.,* neither Sgt. Steel nor Ofc. Fay denied her an attorney, drew her blood, conducted a pat down, or seized her clothing), and Plaintiff has failed to demonstrate integral participation by them. Third, as to the clothing seizure, even if (accepting as true for the purposes of this Motion) Plaintiff did not have visible glass on her clothing, it would still have been constitutionally reasonable for Ofc. Roberson to have seized the clothing to preserve evidence. It would be reasonable for an objective officer to believe there could be microscopic glass particles imbedded in the fibers from the shattered windshield, even if after testing none were found. Thus, as long as Ofc. Roberson had probable cause to believe that Plaintiff's clothing was material evidence of the crime for which she had been arrested, the warrantless seizure was constitutionally supported.[6] *See United States v. Edwards*, 415 U.S. 800, 807-808 (1974).

**III.**    **Sgt. Steel and Ofc. Fay are entitled to qualified immunity.**

Sgt. Steel and Ofc. Fay are entitled to qualified immunity under the first prong as they committed no constitutional violation, as previously discussed. As to the second prong, Plaintiff has failed to "point to prior case law that articulates a constitutional rule specific enough to alert *these* [officers] *in this case* that *their particular conduct* was unlawful." *See Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (emphasis in original). Instead, Plaintiff argues generally that no case on point is necessary because "this case **falls within the obvious**." Resp. at 11:18-21 (emphasis added). In that regard, Plaintiff again argues the facts addressed above claiming Plaintiff should not have been detained or arrested. For the reasons already articulated herein, the additional facts proffered by the Plaintiff (vehicle's hood cold, no injuries, no glass on Plaintiff, bank transactions, alibi witnesses) would not have negated reasonable suspicion and probable cause  -- and Plaintiff has

---

[6] While Plaintiff complains that the clothing she was provided by detention officers was "men's clothing which was a very gross and disgusting experience" for her, Plaintiff fails to cite to caselaw establishing any constitutional right to have a certain type or size of clothing provided. *See* Resp. at 18:27-28.

brought forward no case stating the contrary that would have put officers here on notice that they were acting unconstitutionally. Exculpatory information from the Galleria video was unknown to officers at the time of Plaintiff's arrest. Under the totality of the circumstances known to the officers, there was no clearly established caselaw to have put the officers on notice that Plaintiff should not have been detained or arrested. Thus, Sgt. Steel and Ofc. Fay are entitled to qualified immunity on all federal claims.

### IV. Plaintiff's claims accrued on the date of her arrest; Plaintiff failed to timely file and serve her statutorily required notice of claim.

Plaintiff does not dispute that the City was served with a notice of claim on November 30, 2020, Sgt. Steel was served on December 6, 2020, and Ofc. Fay was never served with a notice of claim. *See* PSOF ¶¶ 102-103. Plaintiff does not dispute that all notices of claim were filed and served beyond 180 days following her arrest of May 25, 2020. *Id*. Thus, there is no dispute of fact as to what was served or when. Plaintiff only disputes the date upon which her claims accrued. Defendants contend that Plaintiff's claims accrued (at the latest) on May 25, 2020, the date of her arrest. Plaintiff argues that her claims did not accrue on the date of her arrest, but rather at some unspecified point[7] "in June of 2020 after conferring with a criminal defense attorney" because it was only then that she "realize[d] ***the extent of her damages*** to formulate an effective notice of claim." *See* Resp. at 19:10-15 (emphasis added). With either party's position, there can be no dispute that all state claims against Ofc. Fay must be dismissed because he has ***never*** been served with a Notice of Claim.

As a matter of law, claims for false arrest and imprisonment accrue on the date of the arrest. *See Hansen v. Stoll*, 130 Ariz. 454, 460, 636 P.2d 1236, 1242 (App.1981); *Rondelli v. Pima Cty*, 120 Ariz. 483, 485, 586 P.2d 1295, 1297 (App.1978). As Plaintiff does not refute that she failed to file and serve her Notice of Claim with any defendant within 180 days of her May 25, 2020 arrest, her false arrest and false imprisonment claims are barred and must be dismissed. Likewise, Plaintiff's remaining claims against the City and Sgt. Steel of negligence (*i.e.*, negligent training, supervision,

---

[7] Plaintiff's Declaration states "I did not comprehend that I had been damaged by this incident for approximately two weeks after the case gained national attention … and after I conferred with legal counsel and learned about my rights and remedies." Declaration at ¶ 15 (Doc. 54-1).

investigation, tactics, *see* SAC at ¶ 92) and intentional infliction of emotional distress (*see* SAC at ¶ 96) arise from her arrest (and events preceding her arrest such as training) and, as such, accrued on May 25, 2020.

Under the Arizona notice of claim statute, "a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12–821.01(B). The Court of Appeals of Arizona has interpreted this section "as a codification of the discovery rule for determining when causes of action against public entities ... accrue." *Humphrey v. State*, 466 P.3d 368, 375, ¶ 23, 249 Ariz. 57, 64 (App. 2020) (quoting *Thompson v. Pima Cty.*, 226 Ariz. 42, 46, ¶ 12, 243 P.3d 1024, 1028 (App. 2010)). Under the discovery rule, "a cause of action accrues when the plaintiff knows…she has been injured and has a 'reason to connect [the injury] to a particular [cause, source, act, event, instrumentality, or condition] in such a way that a reasonable person *would be on notice to investigate* whether the injury might result from fault." *Id*. (emphasis in original) (quoting *Walk v. Ring*, 202 Ariz. 310, 316, ¶ 22, 44 P.3d 990, 996 (2002) and *Doe v. Roe*, 191 Ariz. 313, 322, ¶ 29, 955 P.2d 951, 960 (1998) ("A cause of action [accrues when] the plaintiff knows or with reasonable diligence should know the facts underlying the cause.")). The statute does not carve out an exception for knowing the full "extent of damages," but rather only that one has been damaged. There is no requirement at law for a plaintiff to understand the legal requirements of a claim, or have them explained by an attorney, for accrual to begin.

Here, Plaintiff has alleged no legal incapacity and states under oath that she is "a competent adult" (*see* Pl's Declaration at ¶ 1, **Ex. A** to PSOF), knew she was innocent, and knew that she had been detained, arrested, and processed in jail (*i.e.*, clothing seized, blood evidence taken) by the Scottsdale Police Department for a crime she did not commit. Thus, for purposes of determining accrual of claims, Plaintiff knew she was "injured" and who caused that injury on the date of her arrest. Any new or additional information she later gained regarding the full "extent of her damages" (*i.e.*, media attention, embarrassment, shame, legal advice) arising therefrom would not restart the limitations clock or extend her accrual date. From the date of her arrest, Plaintiff was on notice to investigate and protect her rights.

Furthermore, accrual does not await an injured parties' consultation with an attorney, nor does it toll because a party claims ignorance. "The discovery rule . . . does not permit a party to hide behind its ignorance when reasonable investigation would have alerted it to the claim." *ELM Retirement Ctr, LP v. Callaway*, 226 Ariz. 287, 290, ¶ 12, 246 P.3d 938, 941 (App. 2010) (citing *Doe v. Roe*, 191 Ariz. 313, 324, ¶ 37, 955 P.2d 951, 962 (1998) (plaintiffs have affirmative duty of due diligence to investigate potential claims). "Instead, a tort claim accrues when a plaintiff knows or with reasonable diligence should know of the defendant's wrongful conduct….Consequently, most cases applying the discovery rule share a common thread: The injury or the act causing the injury, or both, have been difficult for the plaintiff to detect." *Id*. (internal citations and quotations omitted). Again, Plaintiff knew she was arrested for a crime she did not commit, but simply claims that she did not realize it had gained media attention. *See* Resp. at 20:11-15. However, she admits that those closest to her, "immediate family, friends, co-workers and her employer," all knew about it when she did not. *Id*. at 20:15-16. As such, even with Plaintiff's "extent of her damages" argument, Plaintiff admits that the full "extent of her damages" were not hidden from her or "difficult for the plaintiff to detect" as everyone around her knew about the media attention and accusations. *See ELM Retirement* at ¶ 12. Thus, Plaintiff's attempt to make an end run around the service requirements of A.R.S. § 12-821.01 fail. Defendants are entitled to summary judgment in their favor and dismissal of all state claims with prejudice.

### V. Doe Defendants must be dismissed.

Plaintiff's Response makes no mention of the Doe defendants. The Doe defendants must be dismissed for the reasons articulated in the Motion.

### VI. Defendants' objections to Plaintiff's Statement of Facts.

Plaintiff's Statement of Facts ("PSOF") (Doc. 54) is replete with impermissible argument and legal conclusions and is lacking in evidentiary support. The PSOF are all given from Plaintiff's perspective of what *she* knew and believed at the time. However, this is a lawsuit questioning whether the conduct of officers met constitutional muster. What Plaintiff or other persons knew and intended at the time is irrelevant. Information unknown to the defendant officer is also irrelevant. An officer's conduct must be judged from the perspective of a reasonable objective officer knowing the facts that

officer knew at the time. Statements regarding Plaintiff's perception that she was being persecuted based upon her race are irrelevant and inappropriate sensationalism under the objective officer standard. Evidence regarding how and when the Galleria surveillance camera panned (PSOF ¶ 106, 125) was unknown to Ofc. Fay at the time of Plaintiff's arrest, and part of Ofc. Fay's attempt to analyze the video. There is no evidence that Ofc. Fay knew the timing of the pan, how often it panned, or whether it was motion activated or pre-programmed to constantly rotate. This all had to be discovered and analyzed by Ofc. Fay—and that took time, as confirmed by Williams. Based upon the foregoing, Defendants object to the following PSOF: ¶¶ 105-111, 115-116, 122, 124 (also a legal question), 125, 127 (also irrelevant because Plaintiff parked on the street, not in the parking lot), and 135.

Plaintiff also misstates evidence and testimony in PSOF ¶¶ 126, 128, 132 (arrested at 12:05am), and 135 (OBC shows she squirmed at time of blood draw). The misstatements regarding Williams' testimony is addressed within this brief. Defendants dispute Plaintiff's unsupported statements that she had no glass-like reflective particles on her clothing, (PSOF ¶¶ 131, 134 and elsewhere in response to DSOF), as that is contradicted by photographic evidence and the clothing in impound itself. Defendants further object to Plaintiff's **Ex. U**, *IA Report*, on the basis of relevance and hearsay. Defendants object to Plaintiff's **Ex. V**, *Google map*, for the purpose of the amount of time it would take to drive the route as no foundation has been laid as to traffic conditions existing on the specific date and time. Defendants only submitted a Google map to demonstrate distance (proximity of hit and run accident to Plaintiff's vehicle), which does not change.

Plaintiff disputes Defendants' facts regarding the description of the hit and run vehicle and states that "Officer was told that it was a Ford." *See* PSOF ¶¶ 15 and 24. However, this is incorrect. The transcript of the interview inaccurately transcribed "four door" to "Ford" and Sgt. Steel corrected that inaccuracy in transcription in **Ex. 26**, *line 62-63 (COS-YESGAR-00170)*. This is verifiable by the audio of that interview. *See* **Ex. 27**, *Steel IA Interview Audio, at timestamp 3:04-3:12*.

Defendants further object to the previously undisclosed opinion of Roger Clark (**Ex. E**, PSOF) on the basis of no prior disclosure, and under Fed. R. Evid. 702. Clark is not assisting the trier of fact to understand evidence but rather inserting his judgment for that of the Court in determining reasonableness. Further, Clark does not view the facts from the perspective of an objective reasonable

officer, makes legal determinations reserved for the Court, and relies upon his analysis of the Galleria surveillance video footage, information that was not known to the arresting officer at the time. This is improper 20/20 hindsight analysis and irrelevant.

### VII. Conclusion.

For the reasons stated herein and in Defendants' Motion, the Defendants pray this honorable Court will grant summary judgment in their favor, dismiss all claims with prejudice, and any other relief this Court should deem just and proper.

DATED this 29th day of March, 2022.

**SCOTTSDALE CITY ATTORNEY'S OFFICE**

/s/     *Lori S. Davis*
Lori S. Davis, Deputy City Attorney
3939 North Drinkwater Boulevard
Scottsdale, Arizona 85251
*Attorneys for Defendants*

### **CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of March, 2022, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and electronic service to Plaintiff's attorneys as follows:

Dale K. Galipo, *Pro Hac Vice*
Eric Valenzuela, *Pro Hac Vice*
LAW OFFICES OF DALE K. GALIPO
21800 Burbank Boulevard, Suite 210
Woodland Hills, CA 91367

Anthony J. Ramirez
WARNOCK MACKINLAY LAW, PLLC
7135 East Camelback Road, Suite F-240
Scottsdale, AZ 85251

Benjamin Taylor
TAYLOR & GOMEZ LAW
2600 North 44th Street, Suite B101
Phoenix, AZ 85008

/s/     *Danielle Taebel*
Scottsdale City Attorney's Office