LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (Pro Hac Vice Ca. Bar No. 144074)
dalekgalipo@yahoo.com
Eric Valenzuela (Pro Hac Vice Bar No. 284500)
evalenzuela@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California  91367
Telephone:      (818) 347-3333
Facsimile:      (818) 347-4118

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF ARIZONA

| | |
|---|---|
| Yessenia Garcia, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>The City of Scottsdale, Brian Steel, Nick Fay, and Does 1 through 10, inclusive.<br><br>Defendants. | Case No. 2:21-cv-00914-SPL-JZB<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF THE CITY OF SCOTTSDALE'S CONCLUSIONS THAT THE INVOLVED OFFICERS HAD PROBABLE CAUSE TO ARREST PLAINTIFF AND WAS WITHIN POLICY**<br><br>Pretrial Conf.:     February 28, 2023<br>Time:                   9:00 a.m.<br>Crtm:                   501 |

**[PROPOSED] ORDER**

Having reviewed Plaintiff's Motion in Limine No. 1 to Exclude Evidence of the City Of Scottsdale's Conclusions that the Involved Officers Had Probable Cause to Arrest Plaintiff and Was Within Policy, and GOOD CAUSE appearing therefore, Plaintiff's Motion is hereby GRANTED.

All parties, their counsel, and any witnesses are hereby precluded from referencing, discussing, testifying, arguing, offering, or publishing any evidence pertaining to the conclusions by the City of Scottsdale's Police Department, that the involved officers had probable cause to arrest Plaintiff, that the arrest was within SPD policy, that the arrest was reasonable, lawful, or justified, or that evidence would be lost if arrest was delayed.

**IT IS SO ORDERED.**

Dated: _____          _____
                                  Honorable Steven P. Logan
                                  United States District Judge

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD AND TO THIS HONORABLE COURT, PLEASE TAKE NOTICE THAT** on February 21, 2014 at 1:30 p.m. in the above-referenced court, Plaintiffs will and do hereby move for an order excluding from evidence at trial any reference to or argument concerning any review or conclusion by the City of Scottsdale Police Department ("SPD"), including their Internal Affair's Department, that any of the involved officers had probable cause to arrest Plaintiff or that the involved SPD officers arrest of Plaintiff was within SPD.  policy.

  Plaintiff Counsel hereby certifies they have in good faith conferred with the opposing counsel in an effort to resolve the disputed evidentiary issues that is the subject of the motion.

  Plaintiff bases her motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Eric Valenzuela in Support of Plaintiffs' Motions in Limine and Exhibits attached thereto; Plaintiffs' [Proposed] Order, any argument raised at the hearing on this motion, and all other pleadings and papers on file with this honorable court.

  Respectfully submitted,

  Dated:  February 7, 2023          LAW OFFICES OF DALE K. GALIPO

1

2

3        By:    _____/s/ Dale K. Galipo_____

4               Dale K. Galipo
                Eric Valenzuela
5               Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.      THE CONCLUSIONS OF THE CITY OF SCOTTSDALE**

3

**REGARDING THE ISSUE OF PROBABLE CAUSE TO ARREST**

**SHOULD BE EXCLUDED**

4

5

Plaintiff seeks to exclude evidence of any conclusions by the Scottsdale

6

Police Department, including any review by the Internal Affairs Department, that

7

the involved SPD officers (1) had probable cause to arrest Plaintiff; (2) that the

8

arrest was within policy; (3) that the arrest was reasonable, lawful or justified; or (4)

9

that evidence would be lost if the arrest was delayed.

10

Here, the SPD, Internal Affair's Report, regarding the incident indicates that

11

the involved officers had probable cause to arrest Plaintiff.  The SDP, Internal

12

Affairs Report states that the facts and circumstances known to the arresting officer

13

at that time would lead a reasonable police officer to conclude that a crime had been

14

committed, that Plaintiff probably committed that crime, and evidence would be lost

15

if the arrest was delayed.  See Exhibit A, *attached hereto,* Internal Affairs Report, at

16

24.  However, the fact that the City of Scottsdale Police Department reviewed the

17

involved SPD officers arrest of the Plaintiff, and found that the officers had probable

18

cause to arrest, that the arrest was within policy, that it was reasonable, lawful or

19

justified or that the evidence would be lost if the arrest was delayed, is irrelevant to

20

the issue at the heart of this case, which is whether Officers Fay and Steel's conduct

21

amounted to a constitutional violation, for an unreasonable search and seizure.

22

Adherence to or deviation from municipal policy is not evidence of a constitutional

23

violation.  Further, given that there are no *Monell* claims in this action, there is little,

24

if any, probative value in this piece of evidence.

25

When balanced against the substantial risk that the City of Scottsdale's

26

conclusions regarding whether the arrest of the Plaintiff was within SPD policy may

27

influence the jury to reach a verdict based on an improper legal standard and thus

28

invite juror error, this evidence should be excluded pursuant to F.R.E. 403.

1    For all the foregoing reasons, Plaintiff respectfully requests an order

2 excluding the conclusions by the City of Scottsdale's Police Department, that the

3 involved officers had probable cause to arrest Plaintiff, that the arrest was within

4 SPD policy, that the arrest was reasonable, lawful, or justified, or that evidence

5 would be lost if arrest was delayed.

6

7 Respectfully submitted,

8  Dated:  January 24, 2014            LAW OFFICES OF DALE K. GALIPO

9

10

11                            By:  _____/s/ Dale K. Galipo_____

12                                 Dale K. Galipo
                                    Eric Valenzuela

13                                 Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26    The Court should deny Defendants' Motion for Summary Judgment with respect to the

27 unlawful arrest of Plaintiff Yessenia Garcia by Defendant Officers Brian Steel and Nick Fay.  Based

28

-2-                              Case No. 2:21-cv-00914-SPL-JZB

on the undisputed facts, as shown by the Galleria parking lot surveillance footage and from the video recordings of the involved officer's body cameras, Officers Steel and Fay lacked reasonable suspicion to detain Plaintiff and probable cause to arrest her.  The Defendants also further violated Plaintiff's constitutional rights by subjecting her to a custodial interrogation while at the same time denying her request to speak to an attorney while she was not free to leave and for forcing her to strip nude while at the jail so that her clothing could be searched and analyzed for fabricated evidence that did not exist in the first place.  Officers Fay and Steel's detention and arrest of Plaintiff was unreasonable and in violation of her Fourth Amendment right to be free from unreasonable searches and seizures.  At a minimum, when the evidence is viewed in the light most favorable to Plaintiff, including all reasonable inferences therefrom, there are triable issues of material fact regarding the unreasonableness of the detention and arrest under the Fourth Amendment and Plaintiff's claim for deliberate indifference under the Fourteenth Amendment.  With regards to Plaintiff's state law claims, there are also triable issues of material fact as to whether Plaintiff complied with the State Law claim requirements.

As included in the Plaintiff's Separate Statement of Facts and the declaration of police practice expert Roger Clark, filed concurrently herewith, the officers lacked reasonable suspicion to detain and probable cause to arrest Plaintiff for several reasons.  See Exhibit X, Clark Declaration, at X.  First, based on the undisputed facts alone, as shown in the videos which capture the incident, Plaintiff parked her car at approximately 8:45 pm and her car never moved from that location.  The longest time that the Plaintiff's car is out of the view of the Galleria surveillance camera is approximately 45 seconds as the camera pans back and forth through out the parking lot.  According to Google Maps, the location of the hit and run incident is approximately 2 minutes away, without traffic.  That would take at least 4 minutes to leave the parking space, be involved in the hit and run and return to the same exact parking space in downtown Scottsdale on a Friday night where the parking lot is normally full.  Since Plaintiff's car is only out of view for at most 45 seconds, it would have been obvious to Officer Fay that Plaintiff was not involved in the hit and run incident and that it would be impossible to leave and comeback from being involved in the hit and run in under 45 seconds.  The parking lot surveillance footage alone should have put Officer Fay on notice that

-3-

Plaintiff was never involved in the hit and run.  Further, the vehicle was cold to the touch and the hood and engine were not warm because the car had been parked for a couple of hours by the time that Officer Fay was flagged down.  Plaintiff nor Kyle Thompson had any injuries to them that were consistent with having been involved in a hit and run.  There was no damage or dents to the hood, and there was no blood, tissue or human fluids on the windshield or hood.

When the evidence is viewed in the light most favorable to Plaintiff, including all reasonable inferences therefrom, Plaintiff and Kyle Thompson did not have any glass on their clothing, if Plaintiff was driving and Mr. Thompson was in the passenger seat when the passenger side windshield was shattered, as alleged, then one would expect glass on Mr. Thompson and would not expect glass to be on the Plaintiff.  Mr. Thompson had proof of purchase on his phone which showed that he was at the nightclub with Plaintiff just as they had been trying to explain to the police.  Plaintiff had five (5) witnesses (Mr. Thompson, Plaintiff's brother, his fiancé, and two additional friends) at the scene with her which all confirmed that Plaintiff was with them at the nearby nightclub at the time of the hit and run.  Both nightclubs that Plaintiff attended, Casa Amigos and HiFi, both have surveillance systems which could have confirmed Plaintiff's alibi.  There are several staff at both nightclubs, such as bouncers, security guards, bartenders and servers, which could also have confirmed Plaintiff's alibi.  Despite Plaintiff and five (5) other people all begging the involved officers to go check the cameras at these nightclubs and to talk to their staff, none of the officers bothered to investigate such evidence that was readily available and easily accessible.

Despite having some initial trouble getting the mouse on the computer to function, security guard Darryl Williams and Officer Fay were able to access the surveillance video footage at approximately 11:39 pm, before Plaintiff had been arrested.  After reviewing the surveillance footage at approximately 11:39 pm, there was no reason to continue to detain and/or arrest Plaintiff and she should have been released immediately after viewing the surveillance video which clearly showed that Plaintiff's vehicle never moved after initially parking.  It would have been obviously impossible for Plaintiff's vehicle to have been involved in the hit and run incident and then return to the parking spot in under the 45 seconds that Plaintiff's car is out of view from the surveillance camera.  A reasonable officer under similar circumstances would not believe that Plaintiff was involved in the hit

and run incident and would have investigated the evidence available at the scene or nearby and try to confirm the statements of the Plaintiff and the witnesses and would not just focus on one or two pieces of evidence.

At a minimum, based on all the evidence, including the videos, the police reports, the interviews of the involved officers and the witnesses, the testimony of Mr. Williams and the declarations of Plaintiff and Roger Clark, there are triable issues of material fact which precludes granting summary judgment.  The disputed issues of material fact are discussed in detail in Plaintiffs' Statement of Facts as well as below.

Additionally, Fay and Steel are not entitled to qualified immunity for three reasons.  First, Fay and Steel's detention and arrest of Plaintiff falls within the obvious as being unreasonable and unlawful.  Second, the U.S. Supreme Court has made it clear that qualified immunity is unavailable on summary judgment when there are disputed issues of material fact.  Third, the law with respect to reasonable suspicion to detain and probable cause to arrest an individual was clearly established at the time of the incident. Accordingly, the Court should deny Defendants' Motion as to Plaintiff's federal claims and as to Plaintiff's supplemental state law claims.

**II.     STATEMENT OF FACTS**

Plaintiff arrives and parks her car near the Galleria parking lot, in the downtown Scottsdale area, at approximately 8:45 pm.  Plaintiff is driving and her boyfriend, Kyle Thompson, is in the passenger seat.  After parking, Mr. Thompson holds Plaintiff's car keys because he has bigger pockets.  Plaintiff's Additional Statement of Facts ("PASF") 105.

Video from the Galleria captures Plaintiff's car arriving and parking in the parking spot and the car is not captured moving until later in the evening after the vehicle has been towed by the police.  As the Galleria surveillance camera pans through the parking lot, Plaintiff's car is out of view for at most approximately 45 seconds, but then returns back into view.  The pattern of how the camera pans through the parking lot indicates that Plaintiff's car is out of view for approximately 45 seconds, then approximately 25 seconds, then approximately 20 seconds, and then the pattern repeats itself back to 45 seconds.  This pattern does not change throughout the various hours of video footage.  The quality of the video from the surveillance system is good enough to show that the car never moves after it

parked at approximately 8:45 pm.  PASF 106.  Plaintiff and Mr. Thompson walk to Casa Amigos for a few drinks and to meet her Brother and some friends.  After Casa Amigos, Plaintiff and her group went to HiFi for some additional drinks.  PASF 107.  Both Casa Amigos and HiFi have surveillance cameras, which none of the officers ever bothered to check to confirm that Plaintiff was not involved in a hit and run incident, even though numerous people asked them to go check the cameras to confirm Plaintiff's alibi.  PASF 108.

Plaintiff and Mr. Thompson left HiFi and their group that they were hanging out with and returned to the car at approximately 11:15 pm.  It only took Plaintiff and Mr. Thompson approximately minutes to walk from HiFi to Plaintiff's car.  PASF 109.  Plaintiff finds that her windshield has been shattered and Mr. Thompson sees some police officers on bicycles nearby so he flags them down so the police can help them because Plaintiff's vehicle has been vandalized.  Mr. Thompson approaches Officer Fay and tries to explain that they just came back from the nightclub to get Plaintiff's belongings, that they parked their vehicle at approximately 9:00 pm and that the car has been parked the entire time and has not moved.  PASF 110.  Plaintiff never entered her car again after returning from HiFi at approximately 11:15.  Plaintiff did open passenger door from outside handle, and grabbed some cigarettes from the pouch on the passenger door but never entered the car.  PASF 111.

Officer Fay immediately began telling Mr. Thompson that he was not telling the truth then Officer Fay began to make a series of false statements to Mr. Thompson, including, but not limited to, that Fay and other officers were at the top of the Galleria parking structure and just watched them drive by and park their car, that someone just told the officers that Plaintiff's car came by and parked over in the parking spot and that is why they were already looking at their car, that the hood of the car and the engine were warm because it had just been driven recently, and that they were watched on the camera pulling up just a few minutes ago.  PASF 112.

Mr. Thompson tried to explain to the officers that he is telling the truth, he tried to explain that they were just at Casa Amigos and HiFi, he even offered to put his hand on the Bible, and also suggested to Officer Fay that he go check the surveillance cameras at Casa Amigos and HiFi and even attempted to show the officers the transaction from his bank which showed that he just made a payment to Casa Amigos.  PASF 113.  Steel told Mr. Thompson that it was a felony to leave the scene of a hit

and run, Mr. Thompson tried to explain that they arrived at 9:00 pm, but the officer accused Mr. Thompson of lying and said that he was not going to talk to him. PASF 114. Thompson felt like a crime was being pinned on him, he was made out to be a liar, he felt threatened, intimidated, worried and scared he could be killed by the police. PASF 115. Plaintiff and Mr. Thompson both believed that the fact that Plaintiff is Mexican and Mr. Thompson is Black was a significant reason why the officers, who were mainly White, did not believe that they were telling the truth. PASF 116.

Officer Steel told Plaintiff to stop making faces like she does not know what Steel was talking about and was told that it is a felony to leave the scene of a hit and run and to provide false information to a police officer. PASF 117. Plaintiff pleads with Officer Steel to talk with HiFi security who could confirm her alibi, but the officers refused to investigate. Plaintiff also plead with Steel to pull the various videos from the parking lot, Casa Amigos and HiFi which showed that Plaintiff had been there since 9:00. PASF 118. Officer Steel also made a series of false statements. For example, Steel said that they are bringing a witness that saw the car driving, that if they were to pull the video its would show that they left just before the accident, and that the police have cameras that show her vehicle was involved in the hit and run. However, the officers had no witness that they were bringing over and there was no video from anywhere which showed that Plaintiff was involved in a hit and run. PASF 119. Plaintiff attempted to explain to Steel that she was not driving on 6th Street, that she has been at the Galleria since 9:00 pm hanging out with some friends and family and that the vehicle was not damages when they arrived. PASF 120. Plaintiff admitted to consuming alcohol. PASF 121.

Mr. Thompson tried to show Steel his proof of transaction from the nightclubs, Steel indicated that he does not need to see the transaction, and Thompson responded "why because it validates my truth". PASF 122. Mr. Thompson tried to explain to Steel that Plaintiff did not have any glass on her clothing, that it is wrong what he is doing because the officers are making up their own story and that they do not have probable cause because the police are making stuff up. PASF 123.

Plaintiff was being detained by the officers, she was not free to leave, and the officers began to conduct a custodial interrogation of Plaintiff. Plaintiff asked for an attorney but her request was denied in violation of her constitutional rights. PASF 124.

It would be impossible to exit the parking spot, be involved in the hit and run and returned to the

-7-                                         Case No. 2:21-cv-00914-SPL-JZB

same parking spot in approximately 45 seconds. It was obvious that Plaintiff's car could not have been involved in a hit and run at that location and return to the same parking spot in approximately 45 seconds. According to Google Maps it takes approximately 2 minutes, with no traffic to travel from the area where Plaintiff's car was parked to the location of the hit and run. That meant it would have taken Plaintiff at least 4 minutes to leave the parking spot, arrive at location of hit and run and then return to the same parking space. PASF 125.

At approximately 11:39 pm. Mr. Williams was able to retrieve the video footage for Officer Fay which showed that the vehicle was parked in the same parking spot and never moved from when Plaintiff first parked at approximately 9:00 pm. PASF 126. This particular parking lot area is normally full on a Friday night. PASF 127. Mr. William's interaction with Fay ended at approximately 1:00 am. After Fay's body camera was turned off, instead of looking whether the car moved, they began looking for anyone that may of damaged the car and the bulk of time was spent trying to find guy smashed window. PASF 128. Surveillance system has a fast forward feature so can fast forward though hours of video footage in a short time to determine if Plaintiff's car ever moves. PASF 129.

Plaintiff's friends and family arrived and try to explain and confirm what Plaintiff had already been telling the officers, which was they were drinking at nearby nightclubs at the time the officers allege that Plaintiff was involved in the hit and run incident. PASF 130.

There were no glass or sparkly particles on Plaintiff's clothing on the night of the incident, or anything that looked like glass. Plaintiff did not have glitter on or any glittery objects on her clothing, including on her top and she was not wearing any kind of shiny lotion or makeup. PASF 131.

Plaintiff was arrested for hit and run and DUI at approximately midnight. PASF 132. Fay nor Steel ever attempted to view the surveillance footage at Casa Amigos or HiFi, despite both places having surveillance systems and they never attempted to contact any of the staff, including the bouncers, security, bartenders/servers to confirm Plaintiff's alibi. PASF 133.

Despite having no glass on her shirt, and nothing that resembled glass on her shirt, Plaintiff was forced to remove all her clothing at the jail and put on some men's clothes that were loaned to her by the jail staff which Plaintiff felt were gross and disgusting and that did not fit at all. PASF 134.

The officer stabbed Plaintiff in the arm with a syringe and claimed that she had moved which is why the needle was not able to penetrate her skin.  Plaintiff did not move while the officer stabbed her arm with the syringe.  PASF 135.

## III.   LEGAL STANDARD

### A.   Summary Judgment

On a motion for summary judgment, the Court views the evidence presented in the motion in the light most favorable to the plaintiff.  Even where the basic facts are undisputed, summary judgment should be denied if reasonable minds could differ on the inferences to be drawn from those facts. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir. 1987).  Summary judgment cannot be granted where a genuine dispute exists as to "material facts."  Fed. R. Civ. P. 56(c).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge...."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor."  *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255).  "A justifiable inference is not necessarily the most likely inference or the most persuasive inference.  Rather, an inference as to another material fact may be drawn in favor of the nonmoving party . . . if it is rational or reasonable."  *United Steelworks of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (internal citation and quotation marks omitted).

## IV.   ANALYSIS

### A.   Fay and Steel Violated Plaintiff's Constitutional Rights

In detaining and arresting Plaintiff, Officers Fay and Steel violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.  An officer needs reasonable suspicion to detain an individual and probable cause to arrest them.  "Probable cause for a

warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed ... an offense." *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir.1990) (internal quotation marks omitted).  In determining whether there was probable cause to arrest, the Court looks to "the totality of circumstances known to the arresting officers, [to determine if] a prudent person would have concluded there was a fair probability that [the defendant] had committed a crime." *United States v. Smith*, 790 F.2d 789, 792 (9th Cir.1986).  Although "police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *United States v. Ortiz–Hernandez*, 427 F.3d 567, 574 (9th Cir.2005); *United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir.2007). "Certainly, an officer may not ignore exculpatory evidence that would negate a finding of probable cause." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015).

While conclusive evidence of guilt is not necessary to establish probable cause, "[m]ere suspicion, common rumor, or even strong reason to suspect are not enough." *McKenzie v. Lamb*, 738 F.2d, 1005, 1008 (9th Cir. 1984).  [I]n a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury, and summary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest.'" *Orr v. Cal. Highway Patrol*, No. CIV. 2:14-585 WBS, 2015 WL 848553, at *5 (E.D. Cal. Feb. 26, 2015) (quoting *Lamb*, 738 F.2d at 1008.

As the initial officers on the scene, Officers Fay and Steel were both integral participants in the detention and arrest of Plaintiff even if another officer handcuffed her and transported her to jail.  As "[a]n integral participant" in the conduct in question, the Ninth Circuit has explained that "[t]his theory of liability 'does not require that each officer's actions themselves rise to the level of a constitutional violation.' Instead, liability may attach if the officer has 'some fundamental involvement in the conduct that allegedly caused the violation.'" *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) (citations omitted). In other words, "an officer could be held liable where he is just one participant in a sequence of events that gives rise to a constitutional violation." *Id*. at 692.

Here, viewing the evidence in the light most favorable to Plaintiff, each of the individual Defendants meaningfully participated in the sequence of events that culminated in Plaintiff's handcuffing, arrest, and detention, and a reasonable jury could conclude that each played an integral role in Plaintiff's arrest and detention. See, e.g., *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (finding that officers meaningfully participated in arrest and therefore were integral participants in the allegedly excessive force where they tackled the plaintiff, helped others to gain control over the plaintiff, ordered the use of hobble restraints, applied hobble restraints, and/or handcuffed the plaintiff); *McFarlin v. Penzone*, 848 F. App'x 695, 698 (9th Cir. 2021) ("We do not preclude liability when the defendant is alleged to have been an active participant, regardless of whether his individual actions rise to the level of a constitutional violation.").

Here, Officers Fay and Steel disregard facts tending to dissipate any potential probable cause such as the video evidence from the parking lot surveillance camera that clearly showed that Plaintiff's vehicle was parked and never moved from approximately 8:45 pm until it was towed after she was arrested. Plaintiff's vehicle was only out of view for at most 45 seconds as the camera panned throughout the parking lot. A reasonably objective officer would have realized that 45 seconds was not nearly enough time for Plaintiff to have left the parking spot, been involved in the hit and run incident and then return to the same exact parking spot in 45 seconds. It was obviously impossible for Plaintiff to have driven to the area of the hit and run and returned in approximately 45 seconds and Google Maps estimates it takes approximately 2 minutes each way with no traffic. Further, according to the security guard Mr. Williams, he and Officer Fay were able to view the surveillance footage from earlier that evening at approximately 11:39 pm, prior to Plaintiff having been arrested. After viewing the video footage at approximately 11:39 pm, a reasonable officer under similar circumstances would have immediately let Plaintiff go free. A reasonable jury can find that it was unreasonable to detain and arrest Plaintiff after reviewing the video footage at approximately 11:39 pm.

Officers Fay and Steel disregarded additional facts that dissipated any probable cause such as the fact that Plaintiff's car hood and engine were cold to the touch because it had not moved in

PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

1  a couple of hours, there was no blood, tissue or fluids on the window or hood, there was no

2  damage to the hood such as dents, both Plaintiff and Mr. Thompson did not have glass on them or

3  any injuries consistent with being involved in a hit and run, Mr. Thompson had proof of

4  transactions at the nearby nightclubs which was ignored, and there were video cameras at the

5  nightclubs that Plaintiff just attended and the staff at these locations were not questioned to

6  confirm Plaintiff's alibi.  Officers' Fay and Steel also ignored Mr. Thompson, Plaintiff's brother,

7  his fiancé and Plaintiff's two friends who all confirmed Plaintiff's alibi.  In disregarding these

8  critical facts and exculpatory evidence, the officers violated Plaintiff's clearly established rights.

9  See *Ortiz–Hernandez*, 427 F.3d at 574; *Lopez*, 482 F.3d at 1073; *Yousefian*, 779 F.3d at 1014.

10          Even the shattered window in it of its self does not allow the officers to disregard

11  additional evidence which strongly supported that Plaintiff did not commit a crime.  All of the

12  evidence and available evidence must be looked at under the totality of the circumstances, and not

13  in a vacuum as the officers did in this case.  Even if the officers had a reason to suspect Plaintiff

14  committed the hit and run because of the location of her car and the shattered window, that was

15  still not enough, especially when there was overwhelming evidence that indicated that Plaintiff

16  was not involved in the alleged crime.  See *Lamb*, 738 F.2d at 1008.  When the evidence is viewed

17  in the light most favorable to the Plaintiff, including all reasonable inferences therefrom, whether

18  the officers acted reasonably or not and if they had the requisite probable cause to arrest is a

19  question for the jury because a reasonable jury could find that the officers did not have probable

20  cause to arrest based on all the exculpatory evidence.  *Id.*

21          A reasonable jury can also find that the involved officers lacked probable cause because

22  they lied about observing glass on Plaintiff's clothing just like the officers lied about Plaintiff's

23  hood/engine being warm, seeing them park their car while the officers were on top of the Galleria

24  parking structure, and having a witness being brought to the scene who will say that Plaintiff just

25  drove by and parked her vehicle shortly before flagging down the police.  Plaintiff was not in the

26  vehicle when the window was smashed, she never entered her vehicle after it was smashed and

27  Plaintiff did not have anything on her person or her clothing that looked like glass, glitter, shiny

28  lotion or sparkly particles.  Further, photos of Plaintiff's clothing confirm there was nothing that

PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

resembled glass on Plaintiff's shirt, and instead was dirt and cotton/lint from normal everyday use and wear. Based on Officer Fay and Steel's numerous false statements, a jury can find that the officers were not being truthful and that they fabricated seeing glass on Plaintiff's clothing, which resulted in Plaintiff being arrested and forced to strip naked at the jail. Accordingly, a reasonable jury can find that Officers Fay and Steel violated Plaintiff's rights and therefore defendants are not entitled to judgment as a matter of law with regards to Plaintiff's Fourth Amendment claim.

A reasonable jury could also find that Plaintiff was subject to a custodial interrogation and that she was not free to leave and that the officers violated her constitutional rights in denying her request to speak to an attorney, while at the same time continuing to question her as a suspect in a crime.

### B.    Fay and Steel Are Not Entitled to Qualified Immunity

Officers Fay and Steel are not entitled to qualified immunity for three reasons. First, this case falls within the obvious that Plaintiff was not involved in a hit and run incident and the officers do not need a case directly on point to put them on notice that there conduct was obviously unreasonable. Second, there are triable issues of material fact which need to be decided by a jury and in order to determine if a constitutional violation occurred, and whether that constitutional violation was clearly established, what facts are applied to the analysis must first be determined. Third, on the date of the incident case law clearly established and put Officers Fay and Steel on fair notice that their conduct was unlawful, including basing probable cause on false statement and ignoring exculpatory evidence that was available and accessible at the scene.

Assuming Plaintiff's facts, Officer Fay saw the parking lot surveillance video before Plaintiff was arrested, which obviously showed that Plaintiff could not have been involved in the hit and run incident. Since the Galleria surveillance showed that Plaintiff parked at approximately 8:45 and never moved her vehicle, and because her vehicle was only out of view of the cameras for at most approximately 45 seconds, it should have been obvious to Officer Steel that Plaintiff was not involved in a hit and run incdent over on 6th Street. Further, based on all the witnesses who all confirmed Plaintiff's alibi and based on the available surveillance footage at both Casa Amigos and HiFi and the staff at these locations who also could have confirmed Plaintiff's alibi, it

should have been obvious to Fay and Steel and Plaintiff was not involved in a hit and run. Especially since there was no glass on either Plaintiff and Mr. Thompson and the car is cold to the touch like it had not been driven for a few hours.  In a sufficiently "obvious" case of constitutional misconduct, the Court does not require a precise factual analogue in our judicial precedents. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) ("[I]n an obvious case, [highly generalized] standards can 'clearly establish' the answer, even without a body of relevant case law."); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."); *United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[I]n [some] instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful[.]" (internal quotation marks and alteration omitted)).

Fay and Steel are also not entitled to qualified immunity because there are disputed issues of material facts.  As indicated in Plaintiffs' Statement of Facts, there are numerous disputed issues of material fact.  See *Lolli v. Cnty. of Orange*, 351 F.3d 410, 421-22 (9th Cir. 2003) (declining to grant summary judgment to officers based upon qualified immunity because if "[the plaintiff's] version of the facts ultimately prevails, there is a reasonable likelihood that the officers would not be entitled to qualified immunity"); see also *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1117 (9th Cir. 2016) (holding that summary judgment was inappropriate where there was disputed evidence about whether the officers were telling the truth about when, why, and how the plaintiff was shot).  Since there are disputed issues of material fact as to whether Fay and Steel had probable cause to arrest Plaintiff, the existence of a constitutional violation cannot be determined on summary judgment.  *Santos v. Gates*, 287 F.3d 846, 855, n. 12 (9th Cir. 2002) (finding it premature to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom").  The question of whether Fay and Steel lacked probable cause to arrest Plaintiff in violation of Plaintiff's Fourth Amendment rights must be left to the jury.  See, e.g., *Longoria v. Pinal Cty.*, 873 F.3d 699, 707 (9th Cir. 2017), *cert. denied sub*

*nom, Rankin v. Longoria*, 138 S.Ct. 2601 (2018) ("The record reveals many other facts in dispute that are material to the determination of whether a reasonable officer would have perceived that [plaintiff] posed any immediate threat."); *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) (holding that "[b]ecause historical facts material to the qualified immunity determination are in dispute," defendants were not entitled to summary judgment on qualified immunity grounds) (internal quotation marks omitted).

Here the numerous material factual disputes include when Fay was able to view the surveillance footage. According to the security guard Mr. Williams, Fay was able to view the footage shortly after 11:39 pm. According to Fay, he was not able to view the footage until around 1:00 am, after Plaintiff had been arrested. However, Fay wrote a report the day after the incident which indicated that he was able to view the footage but that it was inconclusive because how the camera panned throughout the parking lot. He never mentioned in his report not being able to view the footage until after Plaintiff had already been arrested. The first time Fay said that he was not able to view the surveillance footage until after Plaintiff had already been arrested, was well over a year after the incident, during an internal affairs investigation and after Fay had been made aware that a lawsuit had been filed against him relating to the incident. For purposes of summary judgment, the Court must assume that Officer Fay viewed the video prior to Plaintiff being arrested.

It is disputed as to whether there was any glass on Plaintiff's clothing or anything that resembled glass, glitter, shiny lotion or sparkly particles. Plaintiff did not have glass on her clothing and there was nothing that resembled glass on her clothing because she was not in the vehicle when the windshield was shattered. The photos of Plaintiff's clothing confirm that there was no glass and nothing that resembled glass on her clothing. It is disputed as to whether Officer Steel falsified seeing glass on her clothing, just like he falsely claimed that her hood/engine was warm, that the officers saw them drive and park in the parking spot shortly before contacting the officers, and that a witness was being brought to the scene that will confirm they just saw Plaintiff's car drive by and park. A reasonable jury could find that Officer Steel falsified seeing glass on Plaintiff's clothing just like his numerous prior false statements, and that he lacked

1  probable cause to arrest Plaintiff.  For purposes of deciding summary judgment, the Court must

2  assume that there was no glass on Plaintiff's clothing or anything that resembled glass.

3      It is disputed as to whether Plaintiff ever entered the car after the windshield had been

4  shattered.  Defendants allege that Plaintiff entered her car after the windshield was shattered

5  because she had her cigarettes with her.  However, Plaintiff never entered the vehicle after

6  returning from the nightclub and she got her cigarettes by opening the door from the outside and

7  retrieving the cigarettes from the door pouch and did not enter the car to retrieve her cigarettes.

8      The video obviously conclusively shows that Plaintiff was not involved in the hit and run

9  incident.  However, according to Officers Fay and Steel, it is disputed as to whether the

10 surveillance video conclusively shows that Plaintiff did not move her vehicle and could not have

11 been involved in the hit and run.  According to security guard Mr. Williams, it was obvious that

12 Plaintiff was not involved in the hit and run and that it would be impossible to be involved in the

13 hit and run on 6th Street then return back to the same parking spot in approximately 45 seconds.

14 However, in Fay's Report, he indicated that based on how the camera panned it was inconclusive

15 to rule out that she was not involved in the hit and run incident.  A reasonable jury could find that

16 it was obvious and that it was impossible for Plaintiff to be involved in the hit and run and return

17 to the same parking space all in approximately 45 seconds and that the video should have led the

18 officers to conclude that Plaintiff was not involved in the hit and run.  For purposes of this Motion,

19 the Court must assume that the video conclusively establishes that Plaintiff was not involved in the

20 hit and run incident.

21     It is disputed as to whether the vehicle's condition was consistent with having been

22 involved in a hit and run.  The car was cold to the touch because it had not been driven in a few

23 hours.  There was no damage to the hood, no dents, no damage to front bumper, no blood, tissue,

24 human fluids and there was no glass on either Plaintiff or Mr. Thompson.  A reasonable jury could

25 find that other then a smashed windshield, Plaintiff's vehicle was not consistent with having just

26 been involved in a hit and run incident.

27     It is disputed as to whether Plaintiff was entitled to an attorney when she was being

28 detained, was not free to leave and was taking part in a custodial interrogation.  When Plaintiff

asked for an attorney, the involved officers told her she was not entitled to an attorney because she was just being detained and then continued to question her. A reasonable jury could find that a custodial interrogation was occurring when Plaintiff asked for an attorney and that the officers unlawfully did not allow her access to one. Accordingly, based on the numerous triable issues of material fact, Officers Fay and Steel and are not entitled to qualified immunity.

It is well established that "an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir.1988). In the context of an unlawful arrest, then, the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is reasonably arguable that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity. *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir.2007) (noting that an officer will not be entitled to qualified immunity "if officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause"). The linchpin of the qualified immunity analysis is the reasonableness of the officer's conduct in the particular case at hand. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The law acknowledges that an otherwise competent officer will sometimes make an unreasonable decision or make an unreasonable mistake as to law or fact. In those instances, the officer will appropriately be liable under § 1983. See *Liberal v. Estrada*, 632 F.3d 1064, 1078 (9th Cir.2011) (denying qualified immunity because the officer's mistake of fact was unreasonable).

"It is well-established that a 'person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated.'" *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) (quoting *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005) (per curiam)). "'As a corollary ... of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause.'" *Id.* (quoting *Ortiz-Hernandez*, 427 F.3d at 574). An officer is not entitled to a qualified immunity defense, however, where exculpatory evidence is ignored that would negate a finding of probable cause. Here, "there was enough evidence for a reasonable jury

PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

1    to conclude that reasonable officers would not have acted as [Defendant Officers] did in arresting

2    [Plaintiff].' *Grant*, 315 F.3d at 1090.  [The Court] therefore [should] conclude that [Fay and Steel]

3    were not entitled to qualified immunity as a matter of law."  See *Torres v. City of Los Angeles*,

4    548 F.3d 1197, 1212 (9th Cir. 2008)

5         Fay and Steel violated clearly established law when they arrested Plaintiff without

6    probable cause.  It has long been established that an officer cannot based his probable cause

7    determination on false evidence, that an officer cannot lie to establish probable cause and that an

8    officer cannot simply ignore exculpatory evidence that establishes that Plaintiff was not involved

9    in a crime.  *Nicholson*, 935 F.3d at 691; *Ortiz–Hernandez, 427 F.3d at 574; Lopez, 482 F.3d at*

10   *1073; Yousefian, 779 F.3d at 1014.*  Officers of reasonable competence would agree that the

11   information possessed by Fay and Steel at the time of arrest did not add up to probable cause,

12   especially in light of the surveillance video from the parking lot and the surveillance cameras from

13   the nearby nightclubs.  It was not objectively reasonable to believe that Plaintiff may be involved

14   in the hit and run incident in light of video evidence, and other available evidence and all

15   reasonably competent officers would have agreed that Plaintiff was not involved in committing the

16   crime of hit and run.  Even if Officers Fay and Steel made an unreasonable decision or mistake in

17   thinking that Plaintiff was involved in the hit and run, especially in light of the surveillance video

18   from the parking lot, they are not entitled to qualified immunity because such a decision or

19   mistake was objectively unreasonable.

20        Here, any probable cause previously established by the shattered window, the location and

21   time of the hit and run, and the description of the vehicle involved had dissipated once Fay was

22   able to retrieve the surveillance footage, and after five (5) different witnesses all confirmed

23   Plaintiff's alibi and even showed the transaction purchase from the nightclub.

24        Officers Fay and Steel ignored exculpatory evidence that negated a finding of probable

25   cause, violating clearly established law.  This evidence includes the surveillance footage from the

26   Galleria, the statements by all five (5) witnesses, the lack of glass on Plaintiff and Mr. Thompson,

27   the lack of physical injuries on them, the surveillance videos from Casa Amigos and HiFi and

28   failing to talk to the staff at the nightclubs to confirm Plaintiff's alibi.  There was enough evidence

-18-                                    Case No. 2:21-cv-00914-SPL-JZB

1  for a reasonable jury to conclude that reasonable officers would not have acted as Fay and Steel

2  did in arresting Plaintiff and therefore the Court should conclude that Steel and Fay are not

3  entitled to qualified immunity as a matter of law." *Torres*, 548 F.3d at 1212.  Therefore, on the

4  date of the incident the law was clearly established and Fay and Steel were on fair notice that there

5  conduct was unlawful in arresting Plaintiff without probable cause.

6         When the evidence is viewed in the light most favorable to Plaintiff, including all

7  reasonable inferences therefrom, Fay was able to view the surveillance footage from the parking

8  lot at approximately 11:39 pm.  Plaintiff was not arrested until after midnight.  A reasonable jury

9  could find that the conduct of Officers Fay and Steel shocks the conscious because after viewing

10 the security footage from the parking lot it would have been obvious to a reasonable officer that

11 Plaintiff was not involved in the hit and run because her car was shown on the video and it is

12 never out of view for more then 45 seconds and that Officers Fay and Steel were deliberately

13 indifferent to Plaintiff's rights in continuing to detain her and then arrest her after the surveillance

14 footage had been viewed.  A jury could also find that the officers were deliberately indifferent

15 towards Plaintiff when they failed to check if the nightclubs Plaintiff was just at had surveillance

16 video, which they did, and when they failed to talk to any of the staff at the nightclubs, especially

17 since five (5) other witnesses all corroborated Plaintiff's alibi and Plaintiff's boyfriend, Mr.

18 Thompson, even had proof of his transaction at one of the nightclubs.  To make out a substantive

19 due process claim, Plaintiff must show that Fay and Steel's conduct "shocks the conscience." *Cty. of*

20 *Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  One of two standards applies, depending on whether

21 the situation "evolve[d] in a time frame that permit[ted] the officer to deliberate before acting" on the

22 one hand, or "escalate[d] so quickly that the officer [had to] make a snap judgment" on the other.

23 *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).  In the former situation, a "deliberate

24 indifference" standard applies, meaning "something more than negligence but less than intentional

25 conduct, such as recklessness or gross negligence." *Lewis*, 523 U.S. at 849 (internal quotation marks

26 omitted).  And in the latter situation, "where a law enforcement officer makes a snap judgment

27 because of an escalating situation, his conduct may be found to shock the conscience only if he acts

28 with a purpose to harm unrelated to legitimate law enforcement objectives." *Hayes v. Cty. of San*

*Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013).  Here, the involved officers interacted with Plaintiff for over an hour before they arrested her so there was plenty of time to deliberate.  Based on the video evidence from the parking lot alone, a reasonable jury could find that Fay and Steel's conduct was something more than negligence but less than intentional conduct.  Accordingly, Defendants are not entitled to judgment as a matter of law with regards to the Plaintiff's Fourteenth Amendment claim.

A jury could also find that the involved officers acted unreasonably or were deliberately indifferent towards Plaintiff when she was being detained, was not allowed to leave and when she requested to speak to an attorney, the officers denied her right to counsel despite being in a custodial interrogation.  A jury could find that this conduct further supports that Officers Fay and Steel violated Plaintiff's constitutional rights.

Further, Plaintiff has a viable claim with regards to her clothing being seized because Officer Steel fabricated ever seeing glass on her shirt, there was nothing on her shirt that resembled glass, photos of her clothing confirm that there was nothing that resembled glass on her top and that this was only one (1) lie of many that Officer Steel told that day to Plaintiff, including that the hood of her car was warm and that they just saw her park her car right before contacting the police because the police were positioned on top of the parking garage of the Galleria and saw the whole thing.  The only difference is, the other lies only lead to Plaintiff being arrested without probable cause, however this particular lie resulted in Plaintiff being forced to remove all her clothing while at the jail and put on some borrowed men's clothing which was a very gross and disgusting experience for Plaintiff.  A reasonable jury could find that Officer Steel acted unreasonably and was deliberately indifferent towards Plaintiff in fabricating that there was glass on her clothing, which there was not because she was not in the car when the windshield was shattered, and that the involved officers violated Plaintiff's constitutional rights in doing so.

### C.    Plaintiff Timely Filed The Notice Of Claim

Defendants in their Motion for Summary Judgment allege that Plaintiff failed to comply with A.R.S. § 12-821.01 by not timely serving Defendants with her Notice of Claim. Defendants allege that Plaintiff's claims accrued on the date of her arrest on May 25, 2020 and that she had

180 days from that date, until November 21, 2020, to serve Defendants with her Notice of Claim pursuant to A.R.S. § 12-821.01.

Plaintiff only realized the extent of her damages in June of 2020 after conferring with a criminal defense attorney. Defendants did not raise any evidence in their Motion for Summary Judgment to show when Plaintiff knew or should have known the extent of her damages. Plaintiffs must be able to realize the extent of her damages to formulate an effective notice of claim under § 12-821.01. The accrual of a Plaintiff's claim under § 12-821.01 occurred when Plaintiff "comprehended fully and correctly" their damages. *Long v. City of Glendale*, 208 Ariz. 319,326, 93 P.3d 519,525 (2004). "One does not realize something because there is a legal presumption that he knows it." *Id*.

Plaintiff's claims did not accrue under § 12-821.01 until Plaintiff realized the damage which was caused by her unreasonable seizure and also knew or when she should have known the source of the damage:

> *For the purposes of this section, a cause of action accrues when the damaged party **realizes** he or she has been damaged **and** knows or reasonably should know the cause, source, act, event, instrumentality, or condition which caused or contributed to the damage.*

A.R.S. § 12-821.01. "[T]he plaintiff must at least possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Doe v. Roe*, 191 Ariz. 313,323, 955 P.2d 951, 961 (1998). "The cause of action does not accrue until the plaintiff knows or should have known of both the what and the who elements of causation." *Lawhon v. L.B.J. Institutional Supply, Inc.*, 159 Ariz. 179, 183, 765 P.2d 1003, 1007 (App. 1988). "Doe makes clear it is not enough that a plaintiff comprehends a "what"; there must also be reason to connect the "what" to a particular "who" in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault." *Walk v. Ring*, 202Ariz. 310, 316, 44 P.3d 990, 996 (2002).

Here, Plaintiff, who is not an attorney or legally trained, had not realized at the time of the incident, the extent to which she had been wronged by the involved offices which gave rise to the current cause of action against Fay, Steel and the City of Scottsdale.  At the time of the incident, due to the ongoing global pandemic, Plaintiff worked from home and was unaware that her arrest and the incident as a whole had gained publicity and national media attention. Plaintiff had no idea that her "mugshot" and false allegations from the night of her arrest had been published for the world to see which included her immediate family, friends, co-workers and employer.  Because of this, Plaintiff lost communication with said family and friends who judged her for an act she did not commit and her employer severely cut her hours impacting her financial stability (when cut and how much cut by). As mentioned above, Plaintiff is a lay person without specialized knowledge of what a "cause of action" is, what elements are required to prove a wrong, the injury caused by the wrong, or the Constitutional issues which have been raised in this matter.

Under <u>Lawhon</u>, an injured party must know ". . . both the what and the who . . .," in order to reasonably know that she has been injured.  Here, Plaintiff knew the "who", but did not know the "what" until approximately thirty (30) days after the incident, arrest and publicity. Additionally, the *Walk* Court held that "there must be [a] reason to connect the "what" to a particular "who" in such a way that a reasonable person would be on notice to investigate. . .." Here, the connection of the "who" and the "what" was not made until it was explained to her by legal counsel. Unfortunately, Plaintiff had endured the publicity of the incident, her arrest, and the undoubtedly negative responses and attention by her immediate family, friends, co-workers and employer.

Plaintiff's Notice of Claim was filed 186 days after the incident and within 180 days of the discovery of the extent of her damages. Defendant's Motion for Summary Judgment regarding the Notice of Claim issue should be denied.

1

**V.    CONCLUSION**

2

3          For the reasons above stated, the Court should deny Defendants' Motion for in its entirety.

4          Respectfully submitted,

5    DATED: August 10, 2021          THE LAW OFFICES OF DALE K. GALIPO

6

7                                        By:      _____s/ Eric Valenzuela_____

8                                                 Eric Valenzuela
                                                 Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28